UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ROLANDO ANTONIO LEBRON,

        Plaintiff,

  -against-

MARTIN J. O'MALLEY, Commissioner
of the Social Security Administration,

        Defendant.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 20-CV-5636 (FB)

*Appearances:*
*For the Plaintiff:*
SALLY DELUCA
Brooklyn Legal Services
105 Court Street
Brooklyn, New York 11201

*For the Defendant:*
JOLETTA M. FRIESEN
Special Assistant U.S. Attorney
601 East 12th Street, Room 965
Kansas City, Missouri 64106

**BLOCK, Senior District Judge:**

Rolando Antonio Lebron seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Both parties move for judgment on the pleadings. For the following reasons, Jones's motion is granted and the Commissioner's is denied. The matter is remanded solely for a calculation of benefits.

**I**

Lebron applied for DIB on October 30, 2017. He alleged a number of disabling impairments, but focused his claim principally on mental illness.

After Lebron's application was denied at the initial level and on reconsideration, an Administrative Law Judge ("ALJ") heard his claim. In a decision dated December 2, 2019, the ALJ found that Lebron suffered from three severe impairments: bipolar disorder, depression, and schizoaffective disorder. She found that a number of other claimed impairments were not severe and that two—dementia and arthritis—were not supported by objective medical evidence.

Turning to step three of the Commissioner's familiar five-step evaluation process, the ALJ found that Lebron's mental impairments, though severe, did not qualified as presumptively disabling under the Commissioner's Listing of Impairments. In particular, she found that Lebron did not satisfy the criteria for Listing 12.03 (schizophrenia spectrum and other psychotic disorders) or Listing 12.04 (depressive, bipolar and related disorders) because he did not have either one "extreme" or two "marked" limitations in specific areas of functioning. Instead, she found that Lebron had "moderate" limitations in "understanding, remembering or applying information," "interacting with others" and "concentrating, persisting or maintaining pace," and a "mild" limitation in "adapting or managing oneself." AR 20-21.

The ALJ then found that Lebron had the residual functional capacity ("RFC") to perform medium work, with the non-exertional limitation that he was "only capable of performing simple, routine, and repetitive tasks [with] occasional

contact with the public." AR 22. With the assistance of a vocational expert ("VE"), she found that Lebron was still capable of performing his past work as a cleaner, porter, and fruit picker. She further found that Lebron could perform other jobs (linen room attendant, kitchen helper, and day worker) in the national economy.

Based on these findings, the ALJ concluded that Lebron was not disabled and denied his application for benefits. The Commissioner's Appeals Council denied review on October 7, 2020, making the ALJ's decision the final decision of the Commissioner. Lebron timely sought judicial review.

## II

In reviewing the Commissioner's decision to deny benefits, the Court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rucker v. Kijakazi*, 48 F.4th 86, 90-91 (2d Cir. 2022). Lebron argues that the ALJ failed to satisfy those standards at steps two and three of her analysis.

**A.    Step Two**

First, Lebron argues that the ALJ erred in excluding dementia from her list

of his impairments.[1]  To qualify for consideration, an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.  It must be shown by "objective medical evidence from an acceptable medical source"; "[the claimant's] statement of symptoms, a diagnosis, or a medical opinion" will not suffice.  *See id.*

The record contains no objective evidence of dementia.  What is does contain are references to "*pseudo*dementia," a cognitive impairment caused by "a depressive disorder rather than brain dysfunction." *Stedman's Medical Dictionary* 733520.  As noted, ALJ found that Lebron suffered from severe depression and plainly took its effect on his cognition into account.  Lebron's real objection is to the ALJ's assessment of the level of cognitive impairment, which is addressed below.

**B.     Step Three**

At step three, an ALJ must "consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding." 20 C.F.R. § 404.1526(c).  The regulation specifically mentions "the opinion given by one or more medical or psychological consultants designated by the

---

[1] He further alludes to his claimed arthritis but provides no evidence or argument contradicting the ALJ's conclusion that it was not medically established.

Commissioner," *id.*, but "all evidence" would obviously encompass a treating physician's opinion as well. Although such an opinion is no longer entitled to any particular weight, *see* 20 C.F.R. § 404.1520c(a), the ALJ must still evaluate medical opinions according to certain criteria, *see id.* § 404.1520c(c)(1-5), and "*will* articulate . . . how persuasive" he or she found the opinion according to those criteria, *id.* § 404.1520c(b) (emphasis added). The rationale for the rule requiring ALJs to articulate their reasoning survives the repeal of the substantive treating physician rule: "When the ALJ does not adequately explain his rationale, this Court cannot provide meaningful judicial review." *Jones v. Barnhart*, 2004 WL 3158536, at *7 (E.D.N.Y. Feb. 3, 2004) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

Here, the record includes the opinion of consulting psychologist H. Rozelman, Ph.D., who opined based on a review of the record that Lebron had only "moderate" limitations in all four relevant areas of functioning. The ALJ found this opinion "highly persuasive" because it was "consistent with the totality of the evidence which shows the claimant exhibits no more than moderate limitations when compliant with his prescribed treatment." AR 24.

By contrast, Dr. Alexander Sanchez, the psychiatrist who had been treating Lebron since 2014, found "marked" limitations in all but two areas of "concentrating, persistence or maintaining pace," "marked" or "extreme"

5

limitations in all but two categories of "understanding, remembering or applying information" and "adapting or managing oneself," and "marked" limitations in *all* areas of "interacting with others." AR 794-96. The ALJ found this opinion "unpersuasive" because (1) "he fails to support his assessment with objective evidence and instead relies heavily on the claimant's subjective narrative," and (2) "the doctor's assessment is inconsistent with his own treatment notes which shows the claimant's symptoms improve when compliant with treatment." AR 24.

      The ALJ's decision to credit Dr. Rozelman's opinion over Dr. Sanchez's is fatally flawed. First, "[a] patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal quotation marks omitted). "This is especially true for diagnoses of mental disorders because unlike orthopedists, for example, who can formulate medical opinions based upon objective findings derived from objective clinical tests, scans or x-rays, a psychiatrist typically treats the patient's subjective symptoms or complaints about those symptoms." *Santana v. Astrue*, 2013 WL 1232461, at *14 (E.D.N.Y. Mar. 26, 2013). In any event, Dr. Sanchez's opinion is borne out by three mini-mental state examinations (MMSEs) showing that Lebron's memory and cognition are satisfactory when he is compliant with his treatment—and abysmal when he is not.

      Which leads to the ALJ's second reason. Her observation that Lebron's

6

symptoms improved when treated is beside the point because the record clearly shows that Lebron did not always comply with that treatment. Such noncompliance can support an inference that a claimant's symptoms are not as severe as alleged, but an ALJ should not draw that inference "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (S.S.A. 2017). Similarly, the Commissioner may deny benefits to a noncompliant claimant, but only if he or she "do[es] not follow the prescribed treatment without a good reason." 20 C.F.R. § 404.1530(b).

The Commissioner's *Hearings, Appeals, and Litigation Law Manual* (HALLEX) acknowledges that "[t]he existence of a psychiatric impairment may provide good cause for a claimant's failure to follow prescribed treatment." HALLEX II-5-3-1, 2003 WL 25498825, at *1 (S.S.A. last updated June 7, 2021). That reason is obviously present here: Lebron, like many suffering from a cognitive impairment—particularly one with psychotic symptoms—does not fully appreciate the nature of that impairment. As Dr. Sanchez put it, Lebron "recognizes [the] need for treatment but often does not recognize that many of his problems are psychologically based." AR 798. In other words, Lebron's noncompliance is itself a symptom of his mental illness; it in no way suggests that Dr. Sanchez gave an exaggerated description of the limitations imposed by that

7

illness.

In short, the ALD's reasons for rejecting Dr. Sanchez's opinion are not persuasive. There are no other apparent bases for rejecting it, or for preferring the opinion of a non-examining consultative psychologist who merely reviewed the medical records to the psychiatrist who had been treating Lebron for five years. Since Dr. Sanchez's opinion unequivocally establishes that Lebron meets the criteria for a listed impairment, there are no gaps in the administrative record to fill. Therefore, remand for a calculation of benefits is the appropriate remedy. *See Rivera v. Sullivan*, 923 F.2d 964, 970 (2d Cir. 1991) (remanding for award of benefits because "a review of the record fails to reveal any evidence which could support a finding that Rivera was capable of performing substantial gainful work which was available in the national economy").

### III

For the foregoing reasons, Lebron's motion for judgment on the pleadings is granted and the Commissioner's motion is denied. The case is remanded solely for a calculation of benefits.

**SO ORDERED.**

     /S/ Frederic Block     
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 23, 2024

8